Good morning, Your Honors. Patrick Richard, on behalf of Appellant Michael Pattison, may it please the Court. What is an incentive stock option, or an ISO, or an NSO? What are the requirements of accurate financial reporting for stock options? What are the requirements of Accounting Principle Board Opinion 25? Why would it be a useful part of a company's disclosures to address Financial Accounting Standard 123? These and many other questions were put to lay witnesses over our objection and were answered to the great prejudice of Mr. Pattison. The two, there are really two great risks that the Advisory Committee noted, and several courts have noted, as supporting the amendment of Section 701 to add 701c in the year 2000. Both of those risks came to pass in this case because the SEC had no disclosed experts. Mr. Richard, you had the opportunity to depose, in fact, did depose all these people, did you not? Is there any question that if the Court had held a Daubert hearing that it would have ruled that these were not competent accountants who could testify based on their many years of training and experience to what you do during an audit of a public company? Sure, and there are two answers to that question. One is, very specifically in this case, yes, there was prejudice. Two, if that were the standard, then we could always ignore, and the great risk noted What was the prejudice? I won't specifically address that, Your Honor. But of course, the question would write out 701c and would allow the mischief to occur that courts have specifically decried. Let's talk about prejudice. Let's not talk about policy. What's the prejudice? Talk evidence to me. Well, the prejudice of this error, Your Honor, is that it did deprive us of a 702 hearing. And let's take the very first witness in this case. Is there anything they said that was wrong? Yes. Yes, Your Honor. What was it? And didn't your client know who these people were, what their positions were, what their background was, and what was going to be talked about? So you certainly were on notice of all of that. No, that's not correct, Your Honor. So as I said, let's start with the very first witness, Mr. Heroyan. My client was gone. Mr. Heroyan was the head of the audit committee that came in to conduct the investigation, be part of the investigation. Mr. Heroyan, the very first witness who testified, Your Honor, the government disclosed after the close of discovery that he would testify by video. When they listed their witness disclosures, there was no description that Mr. Heroyan, the head of the audit committee, would testify to APB 25 at all. And to answer Your Honor's question, which goes in part to the heart of the prejudice here, Mr. Heroyan testified over our objection. APB 25 comes into play when you know the recipient of the stock options, when you know the number of stock options, when you know the price of the stock options, and when there's been an approval of the stock options. That's incorrect. APB 25 does not address approval. It doesn't define grant date. It doesn't require contemporaneous approval. That testimony. Did you depose this witness before trial? He was deposed by video, Your Honor. Well, I don't know. Video in person. Did you depose him? You can't really claim. He was deposed at a point in time where we did not know that the government would call him as an expert. We did not know that he was going to offer an incorrect definition of APB 25 at the time he was deposed. Did he testify in his deposition about the APB 25 issue? He testified to his investigation and why he thought after the fact. He said many companies were looking at their stock option practices. He was not ever qualified or proper to be an expert. And he did not offer that specific definition at his deposition. So is your claim here that you were surprised by his testimony? Yes, Your Honor. Is that a Rule 702 claim or is that a Rule 26 claim? It's both, Your Honor. Had he been disclosed, there are several options we would have had, of course. If the government had followed the disclosure rules, then Mr. Patterson, A, would know what expert testimony would be solicited from which witnesses, and he could have either challenged that testimony under 702, could have prepared to respond to that testimony, that's why we have expert reports, could have designated a rebuttal expert on the specific points that Mr. Heroyan was making. So to deprive us of all of those very routine procedures when someone discloses experts is a miscarriage of justice. But this is where you need to help me with the record. As I understood it, you brought motions in Lemonade before trial, correct? Yes, Your Honor. With respect to this witness and others. Yes, Your Honor. So you didn't file a motion indicating that you didn't think they should be allowed to offer expert opinions. The motions at that point, we weren't entirely clear. All we knew was that the government had not disclosed expert testimony. Right. And so you said you haven't disclosed these people. As experts, we don't think they should be allowed to offer expert opinions. Correct, Your Honor. The government – and were you fighting then about what things they might or might not say? We did not, no. We also filed a motion requesting an offer of proof given the lack of disclosure. You're fighting in a black hole at that point because you don't know from which of the 20 auditors who worked on this engagement they intend to solicit expert testimony. So we filed two motions. Slow down. Slow down. Yes. You're not about to run out of time. I've already lost 5 minutes. No, you've actually gained 5 minutes because you've been talking to us. Thank you, Your Honor. But, yes, faced with – and the record shows that we actually confirmed that it was not a mistake shortly after Thanksgiving that the SEC disclosed no experts for their case in chief. We contacted them. Is this an oversight? No, it's not an oversight. How are you going to prove your case? We don't think we need experts. No, but what I'm trying to find out is – and you've indicated with respect to this witness. With respect to the other people who you believe improperly offered expert testimony at trial, my impression is, from looking at the record, that you were on notice of the opinions that they were going to offer, sought to exclude them through a motions in limine, failed in that, never went to the judge and said, well, now if that's the case, we need to bring in our own experts or we need a continuance or we can test the expertise of these people. Now, how am I wrong in describing that? Sure. Because there was no pretrial offer proof, as we had requested and has been granted in other cases, and because there was no disclosure as to which witness would offer expert testimony. In fact, it's been the government – I'm not sure that what you're not doing is like a gotcha. It's like, I don't know of any – I mean, it's almost like an auditor is an expert by virtue – you know that they have some expertise, you know that they have some training to do what they do, and you're going to cross-examine them on that. So it almost seems like you were lying in wait to say, well, if you don't call them an expert, even though I know what you're going to say, then – and even though you have the qualifications to actually opine on what you're going to say, but I'm going to wait and then try to claim – I'm going to say you didn't list them as an expert. And as you said, we asked them, are you going to call any experts? No, we don't need any experts. So – Well, and that goes to the heart of it, Your Honor. So I think that's a two-part question, if I may. Well, it seems like a gotcha. It doesn't seem like a surprise. So, Your Honor, what was a surprise was that the government, in a case that required testimony as to generally accepted accounting principles, took the position that they did not need to prove that and that they did not need an expert. What was a surprise is that our numerous pretrial motions were denied. What was a surprise was that the district court judge misread the Bank of China case and wrote out of existence 701C. What was a surprise was that we were precluded from actually asking what you would ask any disclosed expert. What is your expertise based on, Betty Jo Charles? She was the engagement partner. She testified at least three times. She denied any personal knowledge. With any other expert, we would have the right to ask, what is your expertise based on? Were there – How were you precluded from doing that? Are you saying you were precluded because you didn't have the judge actually deny sustained objections to those questions? Yes, if I may. But where is that in your brief? We inquired as to the other 40 restatements that PricewaterhouseCoopers had before trial, and we were precluded because the government's motion of liminy was granted. No, but you just said you were precluded from questioning the expertise of one of the witnesses. Yes. I did not inquire as to – if this were an expert, disclosed expert, Your Honor, it would be a standard ability to say, you work for PricewaterhouseCoopers. They have training on APB 25. They have training on these issues. There were 40 other restatements that your firm had while you were the chief partner nationwide for quality control. That's just basic cross-examination. Because the trial judge said this is not expert testimony, we could not go into any of those other 40 restatements. Did you depose her on any of her prior experience? Her personal experience we explored. We were not able to explore her knowledge of other engagements that she learned as the engagement partner, the national quality control partner for PricewaterhouseCoopers. But I'm going to go back to that. I'm still trying to find out where in your brief do you argue that error was committed because the judge sustained objections to questions that you wanted to pose to this witness? Well, the error was in permitting nondisclosed experts to give what I think we can all agree is expert testimony. No, no. But I'm asking about the last point you made. You said you were prevented from questioning her expertise. Yes. I don't see that argument in your brief. That goes to prejudice, not to the error. The error was to permit nondisclosed experts to give repeated expert testimony as to what the accounting requirements were for APB 25. That was unquestionably expert testimony. Now we're asking what is the prejudice of that, and the way courts usually look at prejudice is how much did that testimony permeate the record. And in the Bank of China case where there was testimony as to a single term trust receipt and banking definition, the court reversed because it permeated the proceeding. Mr. Richard, you're not answering Judge Hurwitz's question. It's a very specific question. Where in your brief did you argue that you were precluded by the trial court's mid-trial rulings about asking those questions? I will. I must tell you, I don't see that in your brief, and that's why I was surprised by the argument. It's part of the record in terms of what we were precluded before trial, and this is well documented in terms of our aim. So it's not in the brief. We have to find it for ourselves in the record? We argue prejudice, whether this is a specific. I'm answering a question as to otherwise what the prejudice is. Well, I think the answer to the question is, no, Your Honor, we didn't specifically make that argument in the briefs, but you can find it if you look at the record. I do not know if it's in our briefs. I do know it's in the record. My apologies. I do know that. I'm asking this because I'm trying to understand. I understand what you're saying is we didn't oppose these people as if they were experts because we got no expert disclosure from the government. That's what's one of your arguments. Yes, Your Honor. And so the question I think we're all trying to ask in a maybe in an imprecise way is, how would you have acted differently pretrial had the government done what you think it was supposed to do? Clearly, they all have qualifications. There doesn't seem to be any dispute in this case that they're all CPAs and, therefore, have the experience and training, as Rule 702 talks about, to testify as experts. So what would you have done differently? Sure. I don't know that we can make that assumption that because someone's a CPA, they're familiar with all of the accounting pronouncements handed down by the Accounting Principals Board and FASB. But what would you have done differently? Yes. So what I would have done differently is to specifically explore, as I would with an expert in a 702 hearing, what are your qualifications to opine, to offer an expert opinion on APB 25 and FAS 123 and all of the other definitions. And we could have disclosed an expert specifically on those issues. If I knew that the head of the Audit Committee was going to offer an erroneous opinion of the court. But this is a civil case. It's not a criminal case. So we're not dealing with the normal issue that the defendant doesn't, you know, shouldn't put on a case unless he has to. If the correct interpretation of this FASB, FSB, was at issue in this case, why didn't you get an expert to testify the other way? Well, two reasons. One, the government, in this case the Securities and Exchange Commission, took the position that no expert testimony was required, even though the jury instruction on internal controls is directly linked to GAP. But this goes back to Judge Callahan's question. This was a disputed issue, I take it, in your mind. There's no dispute that there was a total failure of proof by the SEC. No, I understand. I understand. But we're not a jury. Well, but it seems to me you made a strategy choice to say, if you're not going to say you need an expert, I'm going to take the position. I'm going to, you know, I'm going to hold my hover. I'm going to take the position that you need experts to do it and, therefore, I'm going to get you on insufficiency of the evidence and I'm going to get the Court from letting these people testify. And it didn't work. Well, we cross-examined the witnesses they offered and established inconsistencies in their testimony on specific definitions of grant date and measurement date. And we established that there was no expert testimony on GAP in the government's case in chief. The question is, tactically, a defendant faced with no disclosures of any experts, should that defendant, in order to avoid a claim of prejudice, attempt to retain their own experts in anticipation of the government's failure to disclose experts? I don't think that's reading a lot into it. No, but what we're trying to figure is, is there any really serious dispute in this case about what generally accepting accounting principles require? In other words, if there isn't, then the expert testimony about what they require would probably be harmless error, even if not disclosed before. Yes, and I think that looking at the Eighth Circuit's decision in SEC v. Shanahan, where the Court very clearly said these are complex issues and that the rules do not require, and this is really critical. We're judging by hindsight, the rules did not require at the time contemporaneous approval of a stock option agreement. There's absolutely nothing in APB 25, and no witness has ever said that APB 25 made the moment of decision of any legal or accounting consequence. These are stock option agreements that result in a contract between the company and the employee. I guess I'm asking it in an inarticulate way. Is that a question of law or fact? It's question of fact. There's, you need expert testimony to explain what is or is not required under GAAP. I guess I'm, isn't it a question of law when, when these things must be accounted for, not a question of fact? No, Your Honor. I don't, especially when you look at the cases that are. I mean, put aside the Sienta issue. I understand that's a question of fact. But so you think that two different finders of fact confronted with this same situation could find that one company was, was, one company violated the law by, by accounting for these in a certain way and another company didn't? I think. Can we have different, differing results as to that, as to that issue? Well, let's keep in mind the evidence in this. I think you could because it's fact specific in each case what the documentation was. But the evidence in this case was that APB 25, and this is what the Court in Shanahan also discussed, was so ambiguous that the SEC itself issued guidance in 2006 after all these stock options had been issued and APB 25 was later abandoned. So to answer Your Honor's question, if the notion is that as a matter of law, a judge, either a district court judge or this panel or someone else could read that accounting pronouncement and offer an interpretation as a matter of law rather than having expert witnesses testify, I don't think that's correct. Mr. Richard, one of the things that, that bothers me here is I thought that the heart of this case was whether or not your client had simply falsified records in order to avoid having to report as excess compensation these stock options. So I'm, I'm trying to understand what's so complex about that issue that the jury was asked to decide that it would require expert testimony. Well, I think that's a fair question. If, if we didn't have APB 25 or an interpretation of that, by what standard would we impose that the stock option plan, which was technically complied with here as it was in Shanahan, is not determinative? And a short example I think makes the point. Suppose that this case where the testimony was that quarter after quarter this company recorded a declining property value for their building. And yet the evidence is the market value was skyrocketing. Why isn't that a false book in record? Why isn't that a violation of internal controls? And, and your, the court may be, and certainly the jury, faced with those two pieces of evidence, you recorded quarter after quarter declining property values, when the evidence is the market rate was skyrocketing. But it's, it's even simpler than that. It's, it's a question of how much money did the company actually pay its employees during the period of time covered by the filings with the SEC? And the problem here is that your plan did not report as additional compensation the amounts that were granted in the form of stock options. Well, and the reason I referred to the property value is, of course, depreciation would tell us all that that's perfectly acceptable. And in this case, the only way to answer Your Honor's question, why isn't this simply a matter of they paid compensation, they didn't. In fact, it's a non-cash compensation expense. The cases, to answer Your Honor's question, are very clear that there's nothing improper about granting stock options in accordance with the plan. But we assume that this company should have taken a compensation charge. And we cannot assume that in the absence of evidence. So on that basis, and I would be remiss if I didn't note that the 13b-5 claim here, of course, that went to the jury was also on internal controls. And internal controls referred to, and this was the jury instruction, a system of internal accounting controls means a system sufficient to provide reasonable assurances that transactions are recorded as necessary to prepare financial statements that conform to generally accepted accounting principles and to account for assets. If the notion is that GAAP is something within the ken of the average juror, I don't think that's correct and I'm happy to rest on that basis. So unless there's some other questions, I'd like to reserve a couple minutes. Let's hear from the government. Thank you. May it please the Court. Dominick Freed on behalf of the Securities and Exchange Commission. When Congress promulgated Section 13b, it did so to ensure that corporations engaged in honest bookkeeping, to ensure accurate financial reporting, to give shareholders confidence in corporate management, and to give investors confidence in the capital markets to promote capital formation. What we have here is a jury verdict that Mr. Patterson engaged in falsifying books and records and in circumventing the corporate internal controls. So what was your purpose in not designating these as expert witnesses? These people clearly have training beyond the average person. It's not like the issue here was can you tell if someone's drunk or not or what did you see? Did you see him steal $59,000? So it's clear. They're accountants, they're auditors, they're all of those things. So I'm trying to figure out what's the gaming going on here between the two of you. I don't believe it was any gaming, Your Honor. I think our interpretation of 701C was that we were required to call them as expert witnesses if they were giving expert opinions. And their testimony that they gave at trial was based upon their precipient observations. Well, did they make a precipient observation of APP 25? Well, in its application. Did somebody run across it and say, oh, there it is, and here's what it says? Or were they opining about what it required? Well, the case law that we – and we cite in the brief, and it's actually interesting that both parties rely on the same case. But we believe that in Bank of China you can demonstrate that that's the line that the district court hewed to here. There's a precipient observation that can be informed under an acknowledge. Are you afraid that if you designated them as experts, that somehow that's going to turn into a requirement under the law that you can't bring this case without expert testimony? I mean, there's more going on here. I don't care what anyone says. I mean, he was waiting to, you know, he was waiting to jump on it. And you were being stubborn about, you know, I mean, I'm a lay witness. I couldn't testify on those things. Right. But I don't think the law requires you to leave your knowledge at the courtroom door when you enter the courtroom. If you're somebody with specialized knowledge, the way that You get to answer questions to explain things to the jury that they would not have common knowledge about. The jury doesn't know about AB. Right. But let me back up for a minute. This case isn't about the proper interpretation of APB 25. Oh, but isn't it? Isn't it in the end? I mean, we all agree. We all agree it's okay to backdate stock options, if you will. What apparently was done wrong here is Mr. Patterson on the books of the company didn't reflect these as compensation because of, right? That's true, yes. Okay. And that's wrong because why? Why is that wrong? Why is that wrong? Why is it wrong not to reflect them as compensation? Because as the company generally accepted it. Oh, yes. But to bring this to the facts of this case, it's undisputed that the company disclosed that it was following APB 25 and that if you issue a below fair market value option under fair under APB 25, you have to take a compensation expense for the in the money portion. Therefore, didn't the jury need to understand what APB 25 required? It did. It was established factually through the documents in this case. This is why we didn't need expert testimony, because the facts of this case demonstrate that Mr. Patterson knew that this is how APB 25 works. So whether or not you have to. We're not talking about sufficiency of the evidence now, because I tend to agree with you on the sufficiency of the evidence argument. My question is, wholly apart from that proof about what Mr. Patterson knew or didn't know, why are you entitled to bring on people who testify, yes, that is what APB 25 requires or that's what generally accepting accounting principles require, without designating them in advance as experts? Because they're they're testifying regarding why they reacted the way they did or how they understood what was going on at the time. And I think that's the line that the district court was drawing here. They weren't testifying as to as to what APB 25 actually required, but simply by why  Is this sort of a spontaneous reaction? You know, outside the hearsay rules, because it's a Excited utterance. I mean, it's an excited, oh, my gosh, this violates APT. That wasn't what they said. This would be APB 25. No. I mean, it's not that. It's just that when you have somebody who has specialized knowledge or particularized knowledge that they can testify regarding their observations or their reactions or their recipient testimony can still be brought, even if you are a professional, that you don't have to leave that knowledge at the courtroom door. And so we didn't designate them as So when I write an opinion, are those my observations? When you write an opinion, is that your When I tell you what the law says, I'm just observing what the law says? So I'm a lay witness on the law? Your Honor, I would never say that you're not an expert in the law, if that's what you're trying to say. What I can say is that these are the observations of the auditors and other witnesses that were based on what they reacted to at the time and what everyone understood at the time. And that was the evidence before the jury. And that's why we didn't need an expert. Let's go back to Judge Callahan's initial question, because it does strike me there's, if not gamesmanship here, then hyper-technicality. You're before trial and the other side says, I don't want you putting on any of these lay witnesses as experts. And then you say, well, they're not experts because they're going to testify, they're percipient observations about matters that lay people don't understand. Why not, wouldn't the system work better if you designated them as experts? And then there was a Daubert hearing and they got to explore their opinions and they knew whether or not they needed counter experts. I mean, why are we playing this game? I think the defense is playing a game here, too. They're playing the, as Judge Callahan calls it, the gotcha game. You guys didn't do it right, so we're going to see if we can benefit from it. But you're the government. Why don't you designate these people as experts and do it right? Well, because the way we viewed it is we didn't view it as expert testimony. And so we didn't, we thought that it would be a sideshow in terms of proving up an expert witness when what you have is a percipient witness who may have specialized knowledge that would be helpful. Okay, so that's your agenda. And why, in your view, did the SEC, why were you unable to secure favorable verdicts on three of the five claims? Well, we believe that, as Judge Chen found, that the jury was probably found that there was no materiality. And so it found against us on the fraud claims. But that doesn't bear on the falsification of books and records or the circumvention of the internal controls. There are different standards under them. I was going to ask you a question about materiality. How material was this nondisclosure? What's the, in terms of, I think it was a $14 million change in their disclosures. What's the magnitude of the circumvention? We believe it was very significant. Yeah, but no, I just wanted to ask, what's the magnitude of the company's earnings during that time period? It was, well, the capitalization of the company wasn't very large. This was a smaller company. So we thought that that was a material decision. Do you know what the magnitude of the company? Well, the evidence before the court was that, or before the jury, was that at the time before the issuance of the disclosing that they had engaged in backdating and were investigating it, the stock was trading around 8. And then after they came back and they issued their restatement, it had dropped about 7. So it was a little bit more than a dollar per share. And so we thought that was a significant drop in established materiality. Obviously, who knows what the jury ultimately believed, but we thought there was a significant drop here. Can I ask you a question about the disgorgement remedy in this case? Sure. As I understand it, the disgorgement was measured by, in effect, the profits that Mr. Patterson made by exercising the options, correct? That's correct. In other words, had they been, he made $57,000 in profits and we added pretrial interest to it to arrive at a disgorgement number. That's correct. Wouldn't he have had the exact same options had he been accounting for them appropriately on the books of the company? So you're saying that if he had, if they had disclosed the compensation? His sin in this case, I take it, was not having the company books disclose these as compensation, but rather treating them as, in effect, an even bargain because of the way the – they weren't out of the money on the books of the company, but they really were out of the money. But had they been accounted for properly, wouldn't he have made exactly the same amount of money? We don't know if they would have been issued if they were accounted for properly. Well, we do know that with respect to the higher-ups in the company, the board of directors, they were accounted for properly and issued. Because they weren't issuing in-the-money stock options. That was the big difference. The board of directors was issuing the executive stock options and they weren't issuing them, they weren't backdating them because they weren't giving them in-the-money stock profit. So what proof in this case, given that you're, you have the burden of proof, what proof is there that these options wouldn't have been issued had they been accounted for properly? Is the record – Judge Chen asked the same question. What is there in the record that establishes any causal connection between the profits Mr. Patterson made on these improperly accounted for options and his sin in this case? Well, the – I think the evidence of that is how the board of directors treated executive options and how they weren't issuing in-the-money stock options to executives. And so – and the whole reason for backdating is to hide the compensation expense from your own shareholders and from investors because you don't want people to know how much you actually are giving to your investors, that you're breaking the incentive of giving somebody a stock option that's at-the-money. So the only evidence in the record is that the board followed for itself a policy of not backdating stock options. Right. That's correct. And also that there's a causal connection. I mean, we need to demonstrate a reasonable approximation of the profits from the – or the ill-gotten gains from the – Yeah, but that's – my problem is treating them as ill-gotten gains. I mean, they may – whatever else Mr. Patterson did wrong, it seems to me the record doesn't establish that he wouldn't have gotten these options had he done everything right. And that's – and isn't that your burden to establish that? It is our burden to establish the – yeah, the reasonable approximation, but I'm failing to see where that's – there's no causal connection because we – they issued in-the-money stock options to Mr. Patterson and other employees. The board did not. I think the fair assumption is that – Members of the board testified at trial, correct? Yes. Did any of them say, oh, my gosh, we would have never approved these options if we knew we had to treat them as compensation? I don't think so. I mean, I don't recall if that statement was made, but I think it's a fair assumption from the evidence or a fair – you could assume from the evidence presented that this company would not have done this because had they – I mean, you're giving me a factual scenario that's not actually true. This isn't a lot of money. This isn't what we usually see in these kind of cases. Well, but to this company it was a lot. I mean, in terms of this individual defendant or in terms of the company? $7,000. $59,000 or whatever. Yes. It's not a lot of money. It was just the portion that was the undemanded portion of the stock options. So – but to backtrack to the hypothetical, I don't see how it's our burden to prove what would have occurred if they were actually obeying the law. No, but it is your burden to show a causal connection between – I mean, it's your burden to show these were ill-gotten profits, if you will. Right. And we believe that if you're – you're causing them to – and this is, you know, the discretion standard. As Judge Sessions found, if you're issuing something that you are not – under your own disclosure is not doing, if you're being untruthful with your shareholders and that's the portion of your profit, then that's an ill-gotten gain. I mean, he's backdating stock options. We're going to discourage the amount of in-the-money stock option profit that he received. Mr. Freda, isn't – isn't the answer to Judge Hurwitz's question that the board certainly approved the issuance of stock options to its executives as part of their compensation, but it thought that the stock options were being issued at the money, meaning that they were contemporaneously priced and dated, when in truth and in fact that's not what Patterson and the CEO were doing? That's what was hidden from the board. That's absolutely true, yes. And that establishes, in my view, the violation. But my question is, what – it seems to me what the board was saying is, is there any evidence that these options wouldn't have been issued had they been in the money? That's my question. I think the evidence is, as Judge Talmadge is saying, it's the fact that the board is approving, you know, when the stock option plan is approved and then you're going through and you're going through the company disclosures and you're going through with a presumption. I mean, you're stating to investors that we're issuing stock options and we're doing this at the money. They disclosed that they never issued a stock option that was below fair market value. The notion that the board would have gone along with doing the opposite of what they were saying, I don't see how there's any support for that. I think the only conclusion you can come to is that the board wouldn't have gone forward with that because that was the only – they were proceeding under a factual scenario that didn't exist because they were doing the opposite of what they were telling people. See, that's where I'm having – I'm starting to have some difficulty. I know it's only $75,000, but what I think occurred here is the board thought that these options were being issued in the money, right? No, at the money. At the money means without the money. At the money. At the money. I'm sorry. Okay. Sorry. As opposed to out of the money. So they were being issued at the money. Right. And so they were perfectly happy with the options being issued in a circumstance where there would have been a charge against the company's books for compensation. Assuming that they knew that – but there is – but this is – Your Honor, this is why – Well, you're saying they wouldn't have issued them if they'd known that Mr. Patterson was going to do something illegal, that it was – Well, and that's tied exactly to the profit that they're giving them. There's nothing to establish that the board would have gone contrary to everything they were saying in things like the stock option plan and to the disclosures to investors and saying that regardless of this, you can issue somebody – you can issue yourself an in the money stock option, and that's not causally related to what ultimately is the violation here, the falsification of the books and records. Well, was it the government's theory that a stock option issued at the money is issued in part as an incentive to the executive to make the company perform better so that in the future, the fair market value will be higher, and at that point, not only will the executive benefit, but so will the company. Exactly. And its shareholders. The intent of an incentive stock option is to put the shareholder on par with the recipient of the option, and so you're telling investors that what you're doing is that the employer – employee will only make money if you, the shareholder, will make money. And so I don't know how we could presume that the board would have gone along with issuing stock options in the money and such. That, I think, gives us our causation. But the record is silent. No board member was ever asked, would you have approved after the fact stock options were issued. Well, I mean, I don't recall such a question being asked. I do know that once the board discovered that they had issued in the money stock options, they conducted their investigation and then restated their financials. But that's a different problem. The question then is whether or not because of APP 25, the company's publicly disclosed financial statements are accurate. And under Sarbanes-Oxley, the board has an obligation to ensure that they are, which presumably is why they directed engagement of outside counsel and commenced an internal investigation to find out what happened, and then ultimately directed that restated financials be filed. Right? That's correct. Okay. If the panel has no further questions, we would rest on our briefs. Do I have anything further? Mr. Richard, I'll give you a minute rebuttal. I might need just more than one minute. This last question. You actually have less than one, so he's actually giving you one. I'm giving you extra time. Go ahead. Go ahead. This is important. There is evidence, of course. We presented the evidence from a board member, the chairman of the board, Mr. Stephen Wong, who testified very specifically, very clearly, I did this because I thought it was fair. He actually gave an example. If I had different employees starting on different days of the week and the stock price moved, I didn't think it was fair to give them stock options at different prices. So that evidence is in the record. The CEO did this because he thought it was fair. He's the one who signed each of the approvals. Well, except that the CEO, under the government's theory, was in cahoots with the CFO, your client, to backdate these options and apparently not tell the shareholders or the board that that's what they were doing. Well, again, he was chairman of the board, and he did it, he testified because he thought it was fair. He didn't testify. He was backdating. Some of those approvals aren't even dated. It was the fact of approval, not the date of approval. And if we assume that the contemporaneous approval was required under the accounting literature, we're making an assumption for which the government presented no evidence. I would close by noting that in the Shanahan case, where the court dismissed the claims in the Eighth Circuit, it was the same argument. The disclosure describing, they called it a plain statement in the 10-K that stock options were granted at fair market value. They tried to argue that was false. Your Honors, and the Court noted how complex it was, and even in that case where they had an expert, a statistical expert, the Court held that it wasn't enough. In this case, we could never have a plainer test case. It's not as though there was one expert who gave this testimony and then some lay witnesses who offered some cumulative testimony, Your Honors. This is not that case. Mr. Patterson was not lying in wait. The one expert that the government did disclose was a rebuttal expert. He was so bad, but they did play by the rules, he was so bad they didn't call him. So it's not a matter of lying in wait, but this case is a perfect test case because there was no other expert. It was all lay testimony, and if that was their tactical decision, that should require reversal. GAP required expert testimony. They didn't present it. Thank you very much for your time. Thank you for the argument. And the case just argued is submitted.
judges: Tallman, Callahan, Hurwitz